NEW JERSEY WIRE-CLOTH CO. v. MERRITT et al.

(Circuit Court, E. D. Pennsylvania. August 7, 1899.)

PATENTS—VALIDITY—FIREPROOF BUILDINGS.

The Orr patent, No. 456,202, for improvements in fireproof buildings, and relating to the use of metallic lathing in connection with cement, concrete, plaster, or other suitable plastic materials, in ceiling and arch construction, is void for want of invention in view of the prior state of the art.

This was a suit in equity by the New Jersey Wire-Cloth Company against Merritt & Co. and others for alleged infringement of a patent for improvements in fireproof buildings.

Philipp, Phelps & Sawyer, for complainant.

Ernest H. Hunter and George Q. Horwitz, for respondents.

McPHERSON, District Judge. This suit is brought to restrain an alleged infringement of letters patent No. 456,202, originally issued to William Orr upon an application filed April 30, 1890, and now owned by the complainant as assignee. The specification declares that the applicant has invented "certain new and useful improvements in fireproof buildings," and proceeds to describe the improvements in general terms as follows:

"This invention relates to the construction of ceilings or walls formed of metallic lathing, to which is applied cement, concrete, plaster, or other suitable plastic material, and especially to arches thus constructed, it being the object of the invention to provide an improved construction by which the cost is reduced, and the strength and fireproof qualities of the ceiling or wall increased. To this end my invention consists in an improved means for forming fireproof structures with metallic lathing, and in an improved ceiling and arch construction, all of which will be more particularly described in the specification, and pointed out in the claims."

A detailed description is then given, referring to the drawings that accompany the application:

"Fig. 1 shows an arch constructed in accordance with my invention, part of the plastic material being removed. Fig. 2 shows the method of supporting the lathing during the process of constructing the arch. Fig. 3 is a section of the metallic frame of the arch of Figs. 1 and 2, taken across the curve, and showing the preferred form of construction. Fig. 4 is a similar section of the same construction with metallic lathing formed of perforated sheet metal. Fig. 5 is a similar section of a modified construction, in which the lathing is provided with offsetting clips. Fig. 6 shows an adjustable frame, preferably used to support the lathing. Fig. 7 is a side view of the frame shown in Fig. 6. Fig. 8 shows a section of straight ceiling construction in accordance with my

invention. Referring now particularly to Figs. 1 and 2, A are the ordinary I-beams of a ceiling, and B an arch supported thereby, the arch being formed by a section of metallic lathing, 2, sprung into position above the lower flanges, 1, and embedded in a body of plastic material. For the purpose of supporting this metallic lathing during the process of applying the plastic material, I employ a frame formed preferably of side pieces, 3, and slats, 4, supported thereon, and forming the top of the frame. This frame may be supported in any suitable manner by blocking or otherwise; but I prefer to use the means shown, consisting of a light metallic hanger, 5, supported from the flanges of the beams by arms, 6, and carrying the frame. This hanger is formed preferably in two parts, having a slot and set-screw connection, 7, as shown in Fig. 2, by which the two parts of the hanger may be drawn together, and the supporting ends released from the flanges of the beams, thus allowing the frame to be removed from beneath the arch. The supporting frame may rest

directly upon the hanger, as shown in Fig. 2, but I prefer to employ the construction shown in Fig. 6, in which the hanger is provided with set screws, 12, at each end, on which the frame is supported, and by which it may be adjusted vertically, as desired. With this construction, the metallic lathing having been sprung into position between the beams, the frame will be placed in position beneath it, and raised by set screws, 12, until it is in position to support the lathing. The plastic material is then applied, and allowed to set as desired, when the frame will be lowered by the set screws, and withdrawn from the plastic material, and the frame and hanger will then be moved forward for the construction of another section, as above described.

"The metallic lathing used may be of any suitable construction, either of woven wire, or of metal perforated or cut in any of the common forms. For the purpose of offsetting this lathing from the frame, I preferably provide the lathing, whether of the woven-wire form shown in Figs 1, 2, and 3, or of the perforated sheet-metal form shown in Fig. 4, with ribs, 8, and flanges, 9, extending in the direction of the curve, these ribs and flanges being made to project from the body of the lathing a distance equal to the desired thickness of the plastic material, or the under side of the lathing. The lathing thus being offset from the frame, the cement, concrete, or other material of which the arch is to be formed will be poured on from above, having been allowed to thicken sufficiently for this purpose. The depth of the coating formed will preferably be greater on the upper side of the lathing than on the lower, thus increasing the pressure on the arch, and adding to the tensile strength of the metal a compressive strength produced by the weight of the body of the plastic material upon it; but this is not absolutely necessary. The cement having been allowed to set sufficiently, the two parts of the hanger, 5, are drawn together, releasing the arms, 6, from the flanges of the beams, A, and the frame is withdrawn from beneath the arch, and moved forward for the construction of another section. A coating of plaster, or finish of any suitable material, is then applied on the under side of the arch. A section of lathing, 10, will preferably be bent around the lower flanges, 1, of the beams, as shown in Fig. 1, after the supporting frame is removed, and covered with plastic material, thus protecting the flanges of the beams also, and increasing the fireproof qualities of the construction. The plastic material will also preferably be applied to the sides of the beams and the base of the upper flanges, as shown.

"It is evident that by the use of my supporting frame all danger of the arch being thrown out of form by the greater pressure upon some parts produced by unequal distribution of the cement during the process of construction is avoided. By offsetting the lathing from the frame, and applying the cement from above, I provide a simple and convenient means of constructing a ceiling or arch in which the metallic frame formed by the lathing is entirely embedded in a body of plastic material, the lathing forming a series of angles preventing any slipping between it and the plastic material, and the union of the two making an exceedingly strong ceiling, and an arch that will stand any required test. The down-turned ribs and flanges of the lathing are an important feature of my invention as applied to arch construction, independent of their use as a means for offsetting the lathing from the supporting frame. By the use of these ribs and flanges running in the direction of the curve, the compressive strength of the metallic frame is greatly increased. So great is the advantage obtained by this, that it will frequently be found not necessary to use the supporting frame with lathing so constructed, the ribs and flanges adding sufficient strength to the lathing to support it during the process of applying the cement, so as to prevent the arch being thrown out of form. In case the frame be not employed, the ribs and flanges may be upon the upper or under side of the lathing, and the cement applied from above or below, as preferred. For increasing the strength of the lathing, the flanges may be secured together in any suitable manner, as by clips or lacing, as shown in Fig. 3. While I prefer to use the ribs and flanges, as shown in Figs. 1 to 4, on account of the greater strength of the arch secured thereby, as above described, it is evident that the lathing may be offset from the frame by other means, and that this offsetting is independent of any strengthening feature added to the lathing itself. Thus I have shown in Fig. 5 a section of woven-wire lathing in which clips, 11, are used to offset the lathing from the supporting frame. The same result may

be secured in many different ways, as by down-turned edges of perforated sheet metal, or depressions in the metal. This method of supporting the lathing while the concrete is being applied may be applied not only to an arch, for which it is especially desirable, but also to a straight ceiling, in which case the arms, 6, of the hangers will be extended, and the upper surface of the supporting frame be a plane. A section of a ceiling, C, thus formed is shown in Fig. 8, in which the sheet of lathing is shown also as bent around the lower flanges of the beams at 14, so as to cover and protect them, and avoid the use of the independent sheet of lathing for this purpose. This method of covering the flanges of the beams may be applied also to the arch construction of Fig. 1."

The patent has several claims, but only the first two are now in controversy. These claims are:

"(1) A fireproof ceiling, consisting of metallic lathing extending from beam to beam, and having upon its under side offsetting portions projecting from its body, and a body of plastic material applied from above, and in which the body of the lathing and projections are embedded, substantially as described. (2) An arch formed of metallic lathing bent to the required form, and having upon its under side offsetting portions projecting from its body, and a body of plastic material applied from above, and in which the body of the lathing and projections are embedded, substantially as described."

How far the many advantages that were expected by the patentee, and are declared in the plaintiff's argument to accompany the invention, have been realized, I do not know. There is no evidence that the construction has been used by the plaintiff or by other persons, and the only testimony concerning its value is the opinion of some of the witnesses. The defendants are charged with infringing the patent by building arches of concrete, in combination with a framework made of expanded metal that had been manufactured under the Golding patents of 1884 and 1885. These arches were constructed in a building erected in 1897 in the city of Philadelphia, and the method of construction was essentially the method described in the plaintiff's patent. The defenses are noninfringement, want of invention, and anticipation.

In order to understand the dispute, it is necessary to know with exactness what may be new in the plaintiff's claims, and this may perhaps be arrived at most easily by laying aside what is agreed to be old: (1) A ceiling, either flat or curved concavely, formed of plastic material in combination with a metallic framework embedded in the material, was old before the date of the patent in suit. (2) The use of a centering or molding board to support the plastic material from below, and give shape to it, during the process of hardening, was also well known at that time. (3) The application of the material from above was in like manner a familiar method. (4) Various designs of metallic lathing, some of them capable of being used to produce the finished construction contemplated by the patent, and some of them being unsuited for such use, were also well known, and in more or less general use. These facts are undisputed, and they show that the novelty of the plaintiff's patent must consist in the use that is made of the offsetting portions of the metallic lathing. These projections support the body of the lathing at a uniform distance above the centering, and permit complete embedment, except at the supporting points. Now, the expanded metal used by

the defendants is always so made as to present an irregular surface, having offsetting or projecting portions wherever the still united parts of the strips of metal pass over or under each other. These offsetting portions will differ in height, as the width of the metal strips may differ; and it is therefore possible, by using a framework having strips sufficiently wide, to secure a nearly complete embedment, and thus to obtain whatever advantages the plaintiff's construction may offer to the builder. The first question, therefore, arises, does such use infringe the claims in controversy? If the patent is valid, I think the question must be answered in the affirmative. The specification evidently had in mind the possible use of such a framework as the defendants employed, for it expressly declares: "The same result may be secured in many different ways, as by down-turned edges of perforated sheet metal, or depressions in the metal." And the claims describe the metallic lathing necessary to be used as having "upon its under side offsetting portions projecting from its body," thus including, as it seems to me, not only such lathing as might be specially prepared for the purpose of the patent, but also such lathing as might be adapted for that purpose, although not specially prepared therefor. The claims under consideration are not for a kind of lathing, nor for the process of putting the lathing and the material together, but for a finished result,—for a construction, a thing built of two substances, and intended to accomplish a defined result; and therefore, if the defendants, by the use of nearly identical framework and material, produce essentially the same construction, adapted and designed to accomplish substantially the same result, I cannot avoid the conclusion that the patent has been infringed.

But a conclusion of infringement assumes the validity of the patent, and this point is next to be examined. In spite of the very able argument of counsel for the plaintiff upon this point, I am constrained to hold that, in view of the prior state of the art in April, 1890, there is nothing new in the claims now in question. I do not think it necessary to discuss the numerous patents offered in evidence by the defendants. The state of the art at the date of plaintiff's patent is clearly described in the following quotation from the testimony of Prof. Main, one of the plaintiff's experts:

"The use of a combination of concrete or equivalent plastic material with iron lathing, iron rods, etc., for the general purposes referred to in the patent, was old and well known at the date of application. Iron lathing or webbing had been used at or near the under side of concrete flooring, and had been regularly disposed within the body of plastic material by means of suitable supports so disposed as to maintain a constant distance between the lathing and the centering or board frame adapted to give shape to the under side of an arch. These supports had, however, so far as I am at present aware, been made separate from the structure of the lathing, and, therefore, separately adjustable, requiring extra labor in their adjustment and probably entailing other disadvantages. The patentee proposes to make these offsets integral portions of the lathing, so that when it is bent or sprung into place upon the centering or board support, or in any convenient manner brought closely in contact with it, the lathing will be supported in such a manner as to bring about the results which I have previously explained, when the plastic material is applied. The construction of these supports or offsets as an integral portion of the lathing obviates the necessity of special adjustment, and promotes rapidity of con-

struction, and consequently economy. As such supports are not subsequently withdrawn, no cavities are left in the ceiling, requiring afterwards to be filled up. I understand that this construction is that which is claimed in claims 1 and 2 of the patent."

This quotation seems to me to bring out the decisive facts of the controversy, namely, that offsetting means carried by the centering were well known at the date of the patent in suit, and that the alleged novelty in the claims now being considered consists merely in transferring such means from the centering to the metallic lathing. I think this is an obvious substitution, and as such was not patentable.

It may, perhaps, be also true that even if this transference might have involved invention, in case metallic lathing that carried offsetting means had not been theretofore known and used for the purpose of effecting the embedment of plastic material, nevertheless the claim of novelty must fail, because such lathing was already so known and used at the date of the plaintiff's patent. But I do not consider this point. I think it is sufficient to rest the decision upon the ground already stated,—that the patent merely takes the obvious step of transferring the offsetting means from the centering to the lathing, and that this is not patentable invention. A decree will be entered dismissing the bill, with costs.